# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Kottemann Orthodontics, P.L.L.C., individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Delta Dental Plans Association; Delta USA Inc.; Delta Dental Insurance Company; Arizona Dental Insurance Service, Inc., d/b/a Delta Dental of Arizona; Delta Dental Plan of Arkansas, Inc.; Delta Dental of California; Colorado Dental Service Inc. d/b/a/ Delta Dental of Colorado; Delta Dental of Connecticut; Delta Dental of Delaware, Inc.; Delta Dental of the District of Columbia; Hawaii Dental Service; Delta Dental Plan of Idaho, Inc. d/b/a Delta Dental of Idaho; Delta Dental of Illinois; Delta Dental Plan of Indiana, Inc.; Delta Dental of Iowa; Delta Dental of Kansas Inc.; Delta Dental of Kentucky, Inc.; Maine Dental Service Corporation, d/b/a Delta Dental Plan of Maine; Dental Service of Massachusetts Inc. d/b/a Delta Dental of Massachusetts; Delta Dental Plan of Michigan, Inc.; Delta Dental of Minnesota; Delta Dental of Missouri; Delta Dental of Nebraska; Delta Dental Plan of New Hampshire, Inc.; Delta Dental of New Jersey, Inc.; Delta Dental Plan of New Mexico, Inc.; Delta Dental of New York Inc.; Delta Dental of North Carolina; Delta Dental Plan of Ohio, Inc.; Delta Dental Plan of Oklahoma; Oregon Dental Service d/b/a Delta Dental of Oregon; Delta Dental of Pennsylvania; Delta Dental of Puerto Rico, Inc.; Delta Dental of Rhode Island; | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1

Delta Dental of South Dakota; Delta Dental
of Tennessee; Delta Dental Plan of
Vermont, Inc.; Delta Dental of Virginia;
Delta Dental of Washington; Delta Dental
Plan of West Virginia, Inc.; Delta Dental of
Wisconsin, Inc.; and Delta Dental Plan of
Wyoming d/b/a Delta Dental of Wyoming,

Defendants.

Plaintiff Kottemann Orthodontics, P.L.L.C., on behalf of itself and all others similarly situated, for its Complaint against Defendants Delta Dental Insurance Company; Arizona Dental Insurance Service, Inc., d/b/a Delta Dental of Arizona; Delta Dental Plan of Arkansas, Inc.; Delta Dental of California; Colorado Dental Service Inc. d/b/a/ Delta Dental of Colorado; Delta Dental of Connecticut; Delta Dental of Delaware, Inc.; Delta Dental of the District of Columbia; Hawaii Dental Service; Delta Dental Plan of Idaho, Inc. d/b/a Delta Dental of Idaho; Delta Dental of Illinois; Delta Dental Plan of Indiana, Inc.; Delta Dental of Iowa; Delta Dental of Kansas Inc.; Delta Dental of Kentucky, Inc.; Maine Dental Service Corporation, d/b/a Delta Dental Plan of Maine; Dental Service of Massachusetts Inc. d/b/a Delta Dental of Massachusetts; Delta Dental Plan of Michigan, Inc.; Delta Dental of Minnesota; Delta Dental of Missouri; Delta Dental of Nebraska; Delta Dental Plan of New Hampshire, Inc.; Delta Dental of New Jersey, Inc.; Delta Dental Plan of New Mexico, Inc.; Delta Dental of New York Inc.; Delta Dental of North Carolina; Delta Dental Plan of Ohio, Inc.; Delta Dental Plan of Oklahoma; Oregon Dental Service d/b/a Delta Dental of Oregon; Delta Dental of Pennsylvania; Delta Dental of Puerto Rico, Inc.; Delta Dental of Rhode Island; Delta Dental of South Dakota; Delta Dental of

Tennessee; Delta Dental Plan of Vermont, Inc.; Delta Dental of Virginia; Delta Dental of Washington; Delta Dental Plan of West Virginia, Inc.; Delta Dental of Wisconsin, Inc.; and Delta Dental Plan of Wyoming d/b/a Delta Dental of Wyoming (collectively, the "Delta Dental State Insurers"); Delta Dental Plans Association; and Delta USA Inc. (together, "the Association;" the Delta Dental State Insurers and Association are referred to herein collectively as "Delta Dental" or "Defendants"), alleges as follows:

## INTRODUCTION

1.      This is a class action brought on behalf of dental practices to enjoin an ongoing conspiracy between Delta Dental's many inter-related entities to allocate markets for dental insurance across the United States in violation of the Sherman Act. In addition, this action seeks to recover damages for a class of dentists and dentist practices in the form of both (a) reduced amounts of reimbursement paid by the Delta Dental State Insurers to the dentists and dental practices who provide services to patients under Delta Dental insurance plans, and (b) the difference between what Delta Dental State Insurers paid dentists and dental practices and the competitive reimbursement that non-competing Delta Dental State Insurers would have paid, all as a result of this illegal conspiracy. This action also seeks these damages as a result of anticompetitive conduct Delta Dental State Insurers have taken in its illegal efforts to establish and maintain monopsony power in the market for dental insurance across the United States.

2.      Defendants are engaging in and have engaged in per se illegal market division by virtue of Delta's aggregation of unlawful monopsony power in the market for dental insurance across the United States. These market allocation agreements are reached

and implemented by Delta Dental through its artificial territorial division of that market among the Delta Dental State Insurers. Thus, Defendants have engaged in prohibited market allocation by entering into *per se* illegal agreements that:

      a.    Restrict competition between the Delta Dental State Insurers when operating under the "Delta Dental" brand (the "Market Allocation Conspiracy");

      b.    Reduce the amounts of reimbursement paid by the Delta Dental State Insurers to the dentists and dental practices who provide services to patients under Delta Dental insurance plans (the "Price Fixing Conspiracy"), and

      c.    Restrict competition between the Delta Dental State Insurers when operating under non-Delta Dental brands (the "Revenue Restriction Conspiracy").

3.      The Delta Dental State Insurers are predominantly not-for-profit dental services corporations that operate in defined state or multi-state territories across the United States. They contract with dentists and dental practices—like Plaintiff—that accept Delta Dental insurance (collectively, the "Delta Dental Providers" or the "Class") to reimburse the providers for dental services provided to Delta Dental insureds under Delta Dental insurance contracts.

4.      The Delta Dental State Insurers are supported in turn by the Delta Dental Plans Association, a nationwide entity that acts as an administrator and watchdog for the Delta Dental insurance plans offered by the Delta Dental State Insurers to the Delta Dental

Providers and their patients. The Association is funded and controlled by the Delta Dental State Insurers, and acts as a vehicle for their concerted activity, including via a contract entered into by each Delta Dental State Insurer with the Association (the "Delta Dental Plan Agreement").

5.    A Delta State Insurer that violates one or more of these restrictions faces license and membership termination from the Association, which would mean both the loss of the brand through which it derives the majority of its revenue and the required payment of a large fee to the Association. By carving the 50 U.S. States into defined exclusive territories in which the Delta Dental State Insurers are guaranteed to be free from competition from other Delta Dental State Insurers, the Delta Dental State Insurers have each secured monosopony control within their assigned territories, and Defendants as a group have secured monosopony control over the market for dental insurance across the U.S.

6.    The Delta Dental State Insurers enjoy remarkable market dominance in regions throughout the United States. Acting as a concerted entity, Defendants are now the largest providers of insurance for dental services in the U.S., and have approximately 200,000 dental locations across the U.S. These territorial limitations among actual or potential competitors (i.e. horizontal parties) severely limit the ability of the Delta Dental State Insurers to compete outside of their geographic areas, even under their non-Delta Dental brands.

7.    The Association agreed to entrench and perpetuate the dominant market position that each of them as historically enjoyed in its specifically defined geographic

market, insulating the Delta Dental State Insurers from competition in each of their respective service areas. Their dominant market shares are the direct result of the illegal conspiracy to unlawfully divide and allocate the geographic markets for dental insurance in the United States.

8.     Absent the monopsony powers and territorial protections secured to Defendants by the Market Allocation Conspiracy, dental plan sponsors and members would have greater choice as to the dental insurance they choose to purchase, and the Delta Dental Providers would have greater choice in the dental insurance they choose to accept from their patients.

9.     Defendants have built upon the monopsony control achieved through the Market Allocation Conspiracy to further unlawfully lessen competition in the market for dental insurance through two further conspiracies: the Price Fixing Conspiracy and the Revenue Restriction Conspiracy.

10.    Defendants' Price Fixing Conspiracy takes the form of Defendants agreeing among themselves upon the rates at which they will reimburse the Delta Dental Providers for the services the providers offer to Delta Dental insureds. By conspiratorial agreement, Defendants set these prices at lower than market rates, and then abuse their monopsony control of the dental insurance market to force these rates onto the Delta Dental Providers. The Delta Dental Providers, faced with an overwhelming majority of patients who have purchased Delta Dental insurance (and naturally wish to be treated by a provider that accepts it), have little or no choice but to acquiesce to Defendants' non-competitive and artificially low reimbursement rates. Absent the Price Fixing Conspiracy—and the Market

Allocation Conspiracy and Revenue Restriction Conspiracy, which leaves providers few or no alternative insurance plans to accept from patients—the Delta Dental Providers would have greater choice in the dental insurance they choose to accept, and thus greater choice in the reimbursement rates received for their services.

11.    These two conspiracies are strengthened by a third conspiracy: Defendants' Revenue Restriction Conspiracy takes the form of Defendants agreeing—via the Delta Dental Plan Agreement—that the Delta Dental State Insurers will limit the amount of revenue they derive from dental insurance sold other than under the "Delta Dental" brand, or that they will derive from administering "Delta Dental" plans. In the absence of such an agreement, many of the Delta Dental State Insurers could develop and offer dental insurance under non-Delta Dental plans that would compete with their Delta Dental plan offerings (or with the Delta Dental plan offerings of other Delta Dental State Insurers), or they could compete to provide the services involved in administering Delta Dental plans. Instead, each of the Delta Dental State Insurers agrees, including via the Delta Dental Plan Agreement, to limit the extent to which such competition occurs in order to retain the valued Delta Dental business.

12.    As a result of the Revenue Restriction Conspiracy, the Delta Dental State Insurers—who, per the Market Allocation Conspiracy, have already agreed not to compete with other Delta Dental State Insurers under the Delta Dental brand—further agree to limit their competition with each other and with non-Delta Dental insurance providers under non-Delta Dental brands as well. The Delta Dental State Insurers thus risk losing their Delta Dental franchise if they conduct too much business under other brands or provide

7

too many administrative services under the Delta Dental brand, in competition with the Delta Dental plans that they or other Delta Dental State Insurers offer.

13.    Absent the restraints on competition for non-Delta branded insurance business imposed by the Revenue Restriction Conspiracy, dental plan sponsors and members would again have greater choice in the dental insurance they chose to purchase, and the Delta Dental Providers would have greater choice in the dental insurance they chose to accept from patients.

14.    Absent the restraint on competition for administration of Delta branded business imposed by the Revenue Restriction Conspiracy, companies seeking to have their dental insurance plans administered by third parties would have greater choice among available administrators.

15.    All three of the Market Allocation Conspiracy, the Price Fixing Conspiracy, and the Revenue Restriction Conspiracy have reduced competition in the market for dental insurance in each of the territories in which the Delta Dental State Insurers are based and across the U.S. This decreased competition has harmed the Delta Dental Providers (in the form of reduced choice in the dental insurance plans they can accept from patients, and lower reimbursement rates paid to them under those plans), and has also harmed dental plan sponsors and members (in the form of higher premiums paid to Delta Dental in a non-competitive market, and through lower quality services offered to patients by the Delta Dental Providers that have been starved of reimbursement revenue by Defendants' artificially low prices). While Defendants are predominantly non-profit entities, they have

reaped the benefits of their anticompetitive conspiracies in the form of lavish executive compensation and by building up excessive capital reserves.

16.    All three of the Market Allocation Conspiracy, the Price Fixing Conspiracy, and the Revenue Restriction Conspiracy also have given Delta Dental unequalled dominance in the market for dental insurance. Delta Dental's dominance in this market gives it monopsonist control of the rates of reimbursement paid to the Delta Dental Providers.

17.    The payment of lower reimbursements would not be possible if the market for dental insurance in these Delta Dental State Insurers' exclusive territories were truly competitive. Competition is not possible so long as the Delta Dental State Insurers are permitted to enter into agreements that have the actual and intended effect of restricting their ability to compete with each other.

## JURISDICTION AND VENUE

18.    Plaintiff brings this lawsuit pursuant to Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 3, and under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1367.

19.    This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337(a) because Plaintiff brings its claims under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff and the Class by reason of the violations, as hereinafter alleged, of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. This Court has subject matter jurisdiction over the state law claims pursuant to

28 U.S.C. §§ 1332(d) and 1367, as this is a class action in which the matter or amount in controversy exceeds $5,000,000 exclusive of interest and costs, in which some members of the proposed Class are citizens of a state different from some Defendants.

20.     This Court has personal jurisdiction over the Defendants pursuant to Section 12 of the Clayton Act and/or

21.     This Court can assert personal jurisdiction over each Defendant pursuant to Section 12 of the Clayton Act and/or pursuant to this state's long-arm statute under one or more of the theories below:

      a.     Some of the Defendants, including Delta Minnesota, are incorporated in or have entered into contracts with dental service providers in Minnesota;

      b.     Each Defendant conspired with Delta Minnesota and the Association;

      c.     Each defendant has purposefully availed itself of the privilege of conducting business activities within this state and has the requisite minimum contacts with it because each defendant:

            i.      participated in a conspiracy which injured patients in this state and overt acts in furtherance of the conspiracy were committed within this state;

            ii.     committed intentional acts that were intended to cause and did cause injury within this state;

            iii.    committed intentional acts that defendants knew were likely to cause injury within this state;

iv.   is a party to an anticompetitive agreement with a resident of this state, which agreement is performed in whole or in part within this state;

v.   has committed a tort within this state, which has caused injury within this state; and/or

vi.   either has members within this state or transacts business within this state.

22.   Accordingly, Venue is proper in this district pursuant to Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22, and 26, and 28 U.S.C. § 1391.

## PARTIES

### A.   Plaintiff

23.   Plaintiff Kottemann Orthodontics, P.L.L.C. ("Kottemann," or "Plaintiff"), is a dentistry professional association organized under the laws of the state of Minnesota with its principal office in Maple Grove, MN. During the relevant time period, Plaintiff provided dental goods and services to consumers insured by Delta Dental pursuant to its in-network contract with Delta Dental of Minnesota. As a result of the anticompetitive conduct alleged herein, Plaintiff was deprived of the choice of accepting dental patients under a greater number of insurance plans than it would have in a competitive market, and was reimbursed less for providing dental goods and services than it would have been but for such conduct. Plaintiff has been injured in its business or property as a result of Defendants' violations of the antitrust laws.

11

B. **Defendants**

24.      Delta Dental Plans Association (the "Association") is an Illinois non-profit corporation located at 1515 22nd St # 450, Oak Brook, IL 60523. Association functions as both the administrating network of the Delta Dental State Insurers and is funded and run by them.

25.      Delta USA Inc. is a Delaware corporation located at 1515 W 22nd Street, Suite 450, Oak Brook, IL 60523. Delta USA, Inc. is a subsidiary of the Association and is responsible for facilitating Defendants' central administration of their national and multi-state dental insurance programs.

26.      Delta Dental Insurance Company is a Delaware corporation located at P.O. Box 2059 Mechanicsburg, PA 17055-2059. Delta Dental Insurance Company is the Delta Dental licensee for Alabama, Florida, Georgia, Louisiana, Mississippi, Montana, Nevada, Texas, and Utah.

27.      Arizona Dental Insurance Service, Inc., d/b/a Delta Dental of Arizona ("Delta Arizona") is located at P.O. Box 43026 Phoenix, AZ 85080. Delta Arizona is the Delta Dental licensee for Arizona.

28.      Delta Dental Plan of Arkansas, Inc. ("Delta Arkansas") is located at P.O. Box 15965 N. Little Rock, AR 72231-5965. Delta Arkansas is a subsidiary of Renaissance Health Service Corporation.  Delta Arkansas is the Delta Dental licensee for Arkansas.

29.      Delta Dental of California ("Delta California") is located at P.O. Box 997330 Sacramento, CA 95899-7330 and shares multiple executives with Delta Pennsylvania.

Delta California is a subsidiary of Dentegra Group, Inc. Delta California is the Delta Dental licensee for California.

30.    Colorado Dental Service Inc. d/b/a/ Delta Dental of Colorado ("Delta Colorado") is located at P.O. Box 173803 Denver, CO 80217-3803. Delta Colorado is the Delta Dental licensee for Colorado.

31.    Delta Dental of Connecticut ("Delta Connecticut") is a subsidiary of Delta Dental of New Jersey, Inc. ("Delta New Jersey"). Delta Connecticut is the Delta Dental licensee for Connecticut.

32.    Delta Dental of Delaware, Inc. ("Delta Delaware") shares an address and multiple executives with Delta Dental of Pennsylvania. Delta Delaware is a subsidiary of Dentegra Group, Inc. Delta Delaware is the Delta Dental licensee for Delaware.

33.    Delta Dental of the District of Columbia ("Delta DC") shares an address and multiple executives with Delta Dental of Pennsylvania. Delta DC is a subsidiary of Dentegra Group, Inc. Delta DC is the Delta Dental licensee for the District of Columbia.

34.    Hawaii Dental Service ("Delta Hawaii") is located at 700 Bishop Street, Suite 700 Honolulu, HI 96813. Delta Hawaii is the Delta Dental licensee for Hawaii.

35.    Delta Dental Plan of Idaho, Inc. d/b/a Delta Dental of Idaho ("Delta Idaho") is located at P.O. Box 2870 Boise, ID 83701. Delta Idaho is the Delta Dental licensee for Idaho.

36.    Delta Dental of Illinois ("Delta Illinois") is located at P.O. Box 5402 Lisle, IL 60532. Delta Illinois is the Delta Dental licensee for Illinois.

37.     Delta Dental Plan of Indiana, Inc. ("Delta Indiana") is located at P.O. Box 9085 Farmington Hills, MI 48333-9085. Delta Indiana is a subsidiary of Renaissance Health Service Corporation. Delta Indiana is the Delta Dental licensee for Indiana.

38.     Delta Dental of Iowa ("Delta Iowa") is located at P.O. Box 9000 Johnston, IA 50131-9000. Delta Iowa is the Delta Dental licensee for Iowa.

39.     Delta Dental of Kansas Inc. ("Delta Kansas") is located at 1619 N. Waterfront Parkway P.O. Box 789769 Wichita, KS 67278-9769. Delta Kansas is the Delta Dental licensee for Kansas.

40.     Delta Dental of Kentucky, Inc. ("Delta Kentucky") is located at P.O. Box 242810 Louisville, KY 40224-2810. Delta Kentucky is a subsidiary of Renaissance Health Service Corporation. Delta Kentucky is the Delta Dental licensee for Kentucky.

41.     Maine Dental Service Corporation, d/b/a Delta Dental Plan of Maine ("Delta Maine"), is located at P.O. Box 2002 Concord, NH 03302-2002. Delta Maine is the Delta Dental licensee for Maine.

42.     Dental Service of Massachusetts Inc. d/b/a Delta Dental of Massachusetts ("Delta Massachusetts") is located at P.O. Box 2907 Milwaukee, WI 53201. Delta Massachusetts is the Delta Dental licensee for Massachusetts.

43.     Delta Dental Plan of Michigan, Inc. ("Delta Michigan") is located at 4100 Okemos Road, Okemos, MI 48864. Delta Michigan is a subsidiary of Renaissance Health Service Corporation. Delta Michigan is the Delta Dental licensee for Michigan.

44.     Delta Dental of Minnesota ("Delta Minnesota") is located at P.O. Box 59238 Minneapolis, MN 55459-0238. Delta Minnesota is a subsidiary of Minnesota nonprofit

company Stratacor. Delta Minnesota is the Delta Dental licensee for Minnesota and North Dakota.

45.     Delta Dental of Missouri ("Delta Missouri") is located at P.O. Box 8690 St. Louis, MO 63126-0690. Delta Missouri is the Delta Dental licensee for Missouri and South Carolina.

46.     Delta Dental of Nebraska ("Delta Nebraska") is located at P.O. Box 245 Minneapolis, MN 55440-0245. Delta Nebraska's operations are managed by Stratacor. Delta Nebraska is the Delta Dental licensee for Nebraska.

47.     Delta Dental Plan of New Hampshire, Inc. ("Delta New Hampshire") is located at P.O. Box 2002 Concord, NH 03302-2002. Delta Dental Plan of New Hampshire, Inc. is the Delta Dental licensee for the state of New Hampshire. Delta New Hampshire also provides sales and marketing services to Delta Maine and Delta Vermont under the registered trade name Northeast Delta Dental.

48.     Delta Dental of New Jersey, Inc. ("Delta New Jersey") is located at P.O. Box 222 Parsippany, NJ 07054. Delta New Jersey is the Delta Dental licensee for New Jersey.

49.     Delta Dental Plan of New Mexico, Inc. ("Delta New Mexico") is located at 2500 Louisiana Blvd., N.E. Suite 600 Albuquerque, NM 87110. Delta New Mexico is a subsidiary of Renaissance Health Service Corporation. Delta New Mexico is the Delta Dental licensee for New Mexico.

50.     Delta Dental of New York Inc. ("Delta New York") shares an address and multiple executives with Delta Dental of Pennsylvania. Delta New York is a subsidiary of Dentegra Group, Inc. Delta New York is the Delta Dental licensee for New York.

51.    Delta Dental of North Carolina ("Delta North Carolina") is located at P.O. Box 9085 Farmington Hills, MI 48333-9085. Delta North Carolina is a subsidiary of Renaissance Health Service Corporation. Delta North Carolina is the Delta Dental licensee for North Carolina.

52.    Delta Dental Plan of Ohio, Inc. ("Delta Ohio") is located at P.O. Box 9085 Farmington Hills, MI 48333-9085. Delta Ohio is a subsidiary of Renaissance Health Service Corporation. Delta Ohio is the Delta Dental licensee for Ohio.

53.    Delta Dental Plan of Oklahoma ("Delta Oklahoma") is located at P.O. Box 548809 Oklahoma City, OK 73154-8809. Delta Oklahoma is the Delta Dental licensee for Oklahoma.

54.    Oregon Dental Service d/b/a Delta Dental of Oregon ("Delta Oregon") is located at 601 SW 2nd Avenue Portland, OR 97204. Delta Oregon is the Delta Dental licensee for Oregon and Alaska.

55.    Delta Dental of Pennsylvania ("Delta Pennsylvania") is located at P.O. Box 2105 Mechanicsburg, PA 17055-6999. Delta Pennsylvania is a subsidiary of Dentegra Group, Inc.  Delta Pennsylvania is the Delta Dental licensee for Pennsylvania and Maryland.

56.    Delta Dental of Puerto Rico, Inc. ("Delta Puerto Rico") is located at P.O. Box 9020992 San Juan, PR 00902-0992. Delta California is the majority shareholder in Delta Puerto Rico. Delta Puerto Rico is the Delta Dental licensee for Puerto Rico.

57.     Delta Dental of Rhode Island ("Delta Rhode Island") is located at P.O. Box 1517 Providence, RI 02901-1517. Delta Rhode Island is the Delta Dental licensee for Rhode Island.

58.     Delta Dental of South Dakota ("Delta South Dakota") is located at P.O. Box 1157 Pierre, SD 57501. Delta South Dakota is the Delta Dental licensee for South Dakota.

59.     Delta Dental of Tennessee ("Delta Tennessee") is located at 240 Venture Circle Nashville, TN 37228-1699. Delta Tennessee is a subsidiary of Renaissance Health Service Corporation.  Delta Tennessee is the Delta Dental licensee for Tennessee.

60.     Delta Dental Plan of Vermont, Inc. ("Delta Vermont") is located at P.O. Box 2002 Concord, NH 03302-2002. Delta Vermont is the Delta Dental licensee for Vermont.

61.     Delta Dental of Virginia ("Delta Virginia") is located at 4818 Starkey Rd., Roanoke, VA 24018-8510. Delta Virginia is the Delta Dental licensee for Virginia.

62.     Delta Dental of Washington ("Delta Washington") is located at P.O. Box 75983 Seattle, WA 98175. Delta Washington is the Delta Dental licensee for Washington.

63.     Delta Dental Plan of West Virginia, Inc. ("Delta West Virginia") shares an address and multiple executives with Delta Pennsylvania. Delta West Virginia is a subsidiary of Dentegra Group, Inc.  Delta West Virginia is the Delta Dental licensee for West Virginia.

64.     Delta Dental of Wisconsin, Inc. ("Delta Wisconsin") is located at P.O. Box 828 Stevens Point, WI 54481. Delta Wisconsin is the Delta Dental licensee for Wisconsin.

65. Delta Dental Plan of Wyoming d/b/a Delta Dental of Wyoming ("Delta Wyoming") is located at P.O. Box 29 Cheyenne, WY 82003-0029. Delta Wyoming is the Delta Dental licensee for Wyoming.

66. Throughout the class period, each of the Delta Dental State Insurers had significant market power in respect to the market for dental insurance in their respective licensed states and territories, and together exercised control over the Association.

## TRADE AND COMMERCE

67. The Delta Dental State Insurers, which own and control the Association, are engaged in interstate commerce and in activities substantially affecting interstate commerce, and the conduct alleged herein substantially affects interstate commerce. Association enters into agreements with dental insurance companies throughout the country that specify the geographic areas in which those companies can compete. Many of the Delta Dental Providers, including Plaintiff, provide services, goods, or facilities to persons who reside in other states. Additionally, Plaintiff and other Delta Dental Providers have used interstate banking facilities and have purchased substantial quantities of good and services across state lines for use in providing dental services to Delta Dental insured consumers.

68. Also, the Association controls many of the operations of each of the Delta Dental State Insurers, controls the marketing and use of the "Delta Dental" brand by each of the Delta Dental State Insurers, and dictates the terms and conditions—even to the point of drafting the "Delta Dental Provider Agreement" form—that each Delta Dental State Insurer imposes on each Delta Dental Provider.

18

## FACTUAL ALLEGATIONS

### A.    Background

69.    Most dental services in the United States are provided under a fee-for-service concept, in which a dentist or dental practice is reimbursed depending on whether the dentist is participating or nonparticipating (often referred to as "par" and "nonpar," respectively) in a given dental plan. A participating dentist is one who has entered into a contractual agreement with a dental insurer to provide dental goods and service to persons who are eligible under a given dental insurance plan.

70.    A dental service corporation is a legally constituted not-for-profit organization, incorporated on a state-by-state basis, that negotiates and administers contracts for dental care. These corporations were created by dental practices and dental societies in response to requests from entities (such as workers unions) wishing to obtain a comprehensive plan for dental services for their members, and with the aim of increasing public access to oral health care. The earliest dental service corporations, which were created around 1954 and have since become the Delta Dental State Insurers in most states, were originally sponsored and funded by the constituted dental societies in each state where they were formed.

71.    From its creation, the Association worked to coordinate dental benefit programs for Delta Dental customers (and potential customers) that had employees in multiple states by allocating their insurance business (and potential business) to different Delta Dental State Insurers based on the states or territories in which the customer's employees were based. Coverage was provided this way until the late 1980s when, to

centralize administration of this very large account, the Delta Dental State Insurers agreed to share their provider data through the Association. This led to the creation of the National Provider File, which was made available for commercial accounts in 1990 via DeltaCare USA, and which provided Delta Dental coverage to organizations with employees and subscribers located in multiple states. It also gave the Association access to the prices charged by the Delta Dental Providers across the country and facilitated Defendants' implementation of the Price Fixing Conspiracy.

### 1. The Delta Dental Providers

72.    The Delta Dental Providers are dentists and dental practices—including the named Plaintiff in this proceeding—who are all contractually obligated to accept patients who are insured by Delta Dental, in exchange for lower-than-market reimbursement for dental goods and services provided to those patients, because of the Delta Dental State Insurers' market dominance and the anticompetitive practices described in this complaint.

73.    The Delta Dental Providers receive reimbursement for dental goods and services provided to patients with Delta Dental insurance as participating Delta Dental dentists pursuant to contracts they enter into with the Delta Dental State Insurers (the "Delta Dental Provider Agreements"). These agreements stipulate the terms, conditions, and rates under which the Delta Dental Providers can seek reimbursement from Delta Dental for services a patient elect to receive when visiting a Delta Dental Provider pursuant to a Delta Dental plan.

74.    The Delta Dental State Insurers require Delta Dental Providers to accept certain rigid contractual terms in order participate in Delta Dental insurance plans,

including: (1) to charge Delta Dental patients only the prices for each service as set forth by the Delta State Insurer, (2) to receive only the reimbursement rates for services set forth by the Delta State Insurer, (3) to follow other rules set forth in the Association manual, (4) to be audited to ensure their compliance with the pricing requirements and Association manual, and (5) to treat Delta Dental patients from other Delta Dental State Insurers without any guarantee of payment from that other Delta State Insurer.

75.    Delta Dental Providers, including named Plaintiff, are routinely required to accept a discount of as much as 35%, or more, on market rates from the Delta Dental State Insurers when requesting reimbursement for the goods and services they provide to patients with Delta Dental insurance. This reimbursement rate discount is imposed upon the Delta Dental Providers by way of the Delta Dental Provider Agreement and is an unavoidable cost of accepting Delta Dental insureds as patients.

76.    If a dental practice does not participate in a Delta State Insurer's plan, it is considered a nonparticipating or "nonpar" practice and will be reimbursed at an even lower rate than the below-market Delta Practice rate. Since this is typically an even worse arrangement for a dental practice than the below-market rates for Delta Dental Providers, and since many Delta Dental patients will avoid a practice that is not a participant in their insurance plan, most dental practices have to contract with the Delta Dental State Insurers despite their artificially low reimbursement rates.

## 2.    The Delta Dental State Insurers

77.    The Delta Dental State Insurers are mainly not-for-profit entities which provide dental insurance plans for dental goods and services in their respective states or

multi-state areas. Through the dental insurance plans they offer and administer, the Delta Dental State Insurers reimburse the cost of dental goods and services provided to dental patients across the United States by the Delta Dental Providers—the dentists and dental practices which accept patients with Delta Dental insurance.

78.    The Association currently offers three dental plans through the Delta Dental State Insurers: (a) Delta Dental Premier, (b) Delta Dental PPO, and (c) DeltaCare USA:

    a.    Delta Dental Premier is a traditional fee-for-service plan that allows patients to visit any licensed dentist and to change dentists at any time without notifying Delta Dental. Delta Dental Premier dentists agree to abide by Delta Dental's determination of fees. When a patient visits a Delta Dental Premier dentist, Delta Dental ensures the patient pays no more than the co-insurance percentage specified by their coverage. Delta Dental Premier is Delta Dental's largest dentist network.

    b.    Delta Dental PPO is Delta Dental's preferred provider organization plan (a mid-priced fee-for-service plan). Under Delta Dental PPO, patients have the flexibility to visit any licensed dentist, and usually enjoy lower out-of-pocket costs because PPO dentists have agreed to accept reduced fees for covered procedures when treating PPO patients. Delta Dental PPO is Delta Dental's second largest dentist network.

    c.    DeltaCare USA is a prepaid plan that features set copayments, no annual deductibles and no maximums for covered benefits. In most

states, a patient must select a primary care dentist in the DeltaCare USA network from whom they will receive treatment. Typically, a patient's out-of-pocket expenses will be lower with DeltaCare USA than with Delta Dental Premier or Delta Dental PPO.

79.    The Association contracts with the Delta Dental State Insurers to offer these plans pursuant to the "Delta Dental Plans Agreement," under which the Delta Dental State Insurers are allowed to conduct marketing and advertising using the Delta Dental trademarks and copyrights in exchange for adhering to various rules governing the scope and conduct of their business. Defendants collectively police the Delta Dental State Insurers' compliance with the Delta Dental Plans Agreement to ensure the Delta Dental State Insurers are abiding by its rules and possess the power to terminate a Delta Dental State Insurer's contract in the event of non-compliance.

80.    In large part through the anticompetitive agreements and practices set out in this complaint—including through the collective coordination and management undertaken by the Association on their behalf—the separate Delta Dental State Insurers have grown collectively to become "[t]he most extensive dental network offering the widest selection of dentists nationwide." As of January 2019, the Delta Dental State Insurers were insuring in excess of an estimated 78 million dental patients in the United States.

### 3.    Delta Dental's Market Dominance

81.    Through the above described conspiracies and anticompetitive practices, and including through their subsidiaries and affiliates, the Delta Dental State Insurers have achieved an unprecedented degree of dominance in the market for dental insurance. Delta

Dental State Insurers averaged a 67% market share in their respective territories as of 2017. Delta's nationwide market share has ranged from 59% to 66% from 2013 to 2017.

82.     These market share figures are conservative because they do not include revenue derived by Defendants through their administration of self-funded ERISA plans, and their underwriting for publicly-insured programs such as Medicare Advantage and Medicaid. Through such plan and programs, Defendants derive significant additional revenue and hold significant further market share.

83.     But for the anticompetitive restrictions described in this Complaint, all of the above-described Delta Dental State Insurers would offer insurance for dental services outside of their assigned territories, throughout the United States, and in competition with the other Delta Dental State Insurers. Such competition would result in greater dental insurance choice to dental plan sponsors and members, and higher reimbursement rates and payments to the Delta Dental Providers.

**B.     Delta Dental's Anticompetitive Conduct**

**1.     Delta Dental's Market Allocation Conspiracy**

84.     Delta Dental State Insurers have agreed to a market allocation dividing the 50 states, the District of Columbia, and Puerto Rico into defined state or multi-state territories, agreeing that each Delta State Insurer would only sell Delta insurance in its own territory and not outside of it (the "Market Allocation Conspiracy").

85.     This conduct amounts to an unlawful conspiracy of horizontal allocation of the market for dental insurance within each of those territories and across the United States and is a *per se* illegal horizontal market allocation under the antitrust laws.

86.    The Market Allocation Conspiracy is anticompetitive because it prevents competition among the Delta Dental State Insurers within and between each of the territories allocated to the Delta Dental State Insurers. This lack of competition in turn strengthens the market dominance of the Delta Dental State Insurers, which creates an unfair barrier to entry for non-Delta Dental branded dental insurance providers seeking to provide dental insurance within the Delta Dental territories. The conspiracy is implemented and enforced by the Delta Dental Plan Agreement. Pursuant to that agreement, the Delta Dental State Insurers restrict their offering of dental insurance to their assigned territories; in exchange, the supra-competitive premiums they enjoy as a result of exercising their monopsony power to underpay the Delta Dental Providers are funneled back to the Association, and distributed to the other Delta Dental State Insurers.

87.    In the absence of the Market Allocation Conspiracy the Delta Dental State Insurers would compete for dental insurance business across state lines, and outside of and between the territories they presently have allocated exclusively among themselves.

88.    Competition between the Delta Dental State Insurers would benefit Delta Dental Providers, providing greater choice in respect of the dental insurance plans they could accept from potential dental patients, freeing the providers from the monopsony control and below-market reimbursement rates imposed upon them by whichever Delta Dental State Insurer is allocated exclusive control of the territory in which the provider was based.

89.    Such competition would also benefit the dental plan sponsors and members by driving down the premium prices that members as patients are required to pay for such

25

insurance, or by increasing the scope of the coverage offered under an insurance policy for the same premium price.

90.    Defendants' Market Allocation Conspiracy caused Plaintiff and the Delta Dental Providers to be paid lower reimbursement rates for the goods and services they provided to the Delta Dental insureds. Plaintiff and Class members have been injured in their property and business as a result.

### 2.    Delta Dental's Price Fixing Conspiracy

91.    Defendants have also colluded to use their dominant market position to fix artificially low reimbursement rates to compensate Delta Dental Providers for goods and services provided to Delta Dental insureds (the "Price Fixing Conspiracy").

92.    Defendants draw upon their access to market rates data for dental goods and services across the U.S. via the records obtained and held by the Association, using these to determine the sub-market rates they will impose upon the Delta Dental Providers.

93.    As mentioned above, Delta Dental State Insurers require Delta Dental Providers to accept fixed reimbursement rates as a condition of participating in Delta plans, and dentists and dental practices are unable to negotiate higher reimbursement rates.

94.    This conduct amounts to an unlawful Price Fixing Conspiracy and is illegal under the antitrust laws.

95.    The Price Fixing Conspiracy is also anticompetitive. Fair competition between the Delta Dental State Insurers is restricted by Defendants' (1) agreeing among themselves the rates at which they will reimburse the Delta Dental Providers for the

services the providers offer to Delta Dental insureds, and then (2) abusing their monopsony control to force these artificially low rates onto the Delta Dental Providers.[1]

96.    Absent Defendants' Market Allocation and Price Fixing Conspiracies, Delta Dental Providers would have a choice among the dental insurance plans they could accept from their patients, being then better positioned to negotiate with the Delta Dental State Insurers for higher reimbursement rates for the goods and services they provide to Delta Dental insureds under Delta Dental insurance plans.

97.    Defendants' Price Fixing Conspiracy has caused Plaintiff and the Delta Dental Providers to receive less reimbursement for the goods and services they provided to Delta Dental insureds. Consequently, Plaintiff and Class have been injured in their property and business as a result.

**3.    Delta Dental's Revenue Restriction Conspiracy**

98.    Defendants have also engaged in a conspiracy to restrict the amount of revenue Delta Dental State Insurers can derive by limiting their ability to offer non-Delta insurance plans, thereby preventing them from offering other dental plans that would make

---

[1] The Price Fixing Conspiracy could theoretically have the pro-competitive benefit of lowering the dental insurance premiums paid by dental insurance plan sponsors and members in each of the state, multi-state, or national territories in which Defendants conduct business. Or, it would allow Delta Dental to return significant funds to the dental providers and communities that Delta Dental ostensibly serves so they could invest in better facilities, equipment, and patient services. However, Delta Dental does neither of these things. Instead, as set out above, Defendants channel the lion's share of the profits they make from the conspiracy to keep reimbursement rates low back into lavish compensation for their executives and over-inflated capital reserves.

the Market Allocation and Price Fixing conspiracies ineffective or less effective (the "Revenue Restriction Conspiracy").

99.   This Revenue Restriction Conspiracy mandates that the Delta Dental State Insurers limit or restrain the extent to which they conduct dental insurance business and derive revenues other than under the Delta Dental brand.

100.   Although several Delta Dental State Insurers have the skills and knowledge required to offer dental services that would compete with the Delta Dental plans, they have operated carefully in a way to avoid competing with the plans offered by other Delta Dental State Insurers, or the dental businesses operated by the subsidiaries of other Delta Dental State Insurers.

101.   The Revenue Restriction Conspiracy is anticompetitive because it places a direct cap on the amount of business the Delta Dental State Insurers can generate under their non-Delta Dental insurance plans and in competition to their Delta Dental business. This conspiracy is also implemented via the Delta Dental Plan Agreement, and prevents the Delta Dental State Insurers from developing and offering dental insurance under non-Delta Dental plans that would compete with their Delta Dental plan offerings, and from competing with the Delta Dental plan offerings of other Delta Dental State Insurers.

102.   Without the Revenue Restriction Conspiracy, Delta Dental State Insurers would offer non-Delta plans in competing territories, and that competition would result in higher reimbursement rates for Delta Dental Providers and lower premiums and better coverage for Delta Dental patients.

28

103.   The Revenue Restriction Conspiracy thus has caused Delta Dental Providers to receive lower reimbursements than they would have received in the more competitive market, sustaining damages as a result.

### 4.   Relevant Market

104.   To the extent that Plaintiff's claims require the definition of a relevant market, the relevant product market is the market for dental insurance, and the relevant geographic markets are (1) the United States, (2) the defined territories into which Delta divided up the United States in the Market Division Conspiracy, and (3) the 50 states, the District of Columbia, and Puerto Rico.

105.   The Delta Dental State Insurers, including as acting through the Delta Dental Plans Association, exercise considerable market power in the markets in which they operate. Almost every Delta Dental State Insurer controls at least 20% of the market for dental insurance in the state in which it operates; more than half control more than 50% of that market in the state in which they operate; and several control almost 100% of that market in the state in which they operate. Together, and on average when acting through the Delta Dental Plans Association, the Delta Dental State Insurers control 65% of the market for dental insurance in the United States.

106.   At the same time, Defendants possess market power in the relevant markets, the conspiracies each have significant anticompetitive effects in respect of non-substitutable products within those markets, and the conspiracies had no or insufficient pro-competitive justifications. Thus, Defendants would be liable for each and every of the alleged conspiracies even under a rule of reason analysis.

29

107.    The relevant markets are the nationwide, interstate, and state-wide markets for the provision of dental insurance. As set out above, the majority of the Delta Dental State Insurers conduct the entirety of their business within a single state, with a minority of the Delta Dental State Insurers conducting the entirety of their business within two or three contiguous states. As also set out above, the Delta Dental State Insurers are present in all of the U.S. states, and act through the Association to organize and implement their business activity in the market for dental insurance across the United States as a whole.

108.    Defendants have exercised this market power to achieve significantly anticompetitive purposes with few or no compensatory features in respect of each of the three alleged conspiracies. The Market Allocation Conspiracy is a horizontal territorial division agreed and enforced by the Delta Dental State Insurers with each other and through the Association. It serves the sole purpose of protecting each of the Delta Dental State Insurers from competition by other Delta Dental State Insurers within the territories allocated to each insurer. These territorial allocations serve no pro-competitive purpose and exist only to protect the monopoly power and market dominance of each of the Delta Dental State Insurers in their assigned territories.

109.    At all relevant times, Delta Dental had substantial market power in the market for dental insurance at the national, territory, and state levels. The Delta Dental State Insurers all have significant market power in their states and territories, and Delta dental as a whole has significant market power nationwide.

110.    The Association and the Delta Dental State Insurers have the power to maintain both the reimbursement of dentists at sub-competitive levels, and the premiums

for patients at supracompetitive levels, and to do so profitably without losing substantial sales to other dental insurance plans.

**5.    Delta Dental Earned Substantial Profits from its Conspiracies**

111.    Even though most of the Delta entities are not-for-profit entities, they have earned substantial profits derived from the effects of the conspiracies alleged herein.

112.    These profits have been used in part to handsomely compensate Delta Dental directors and executives as a reward for implementing and maintaining the highly profitable conspiracies alleged above. In 2017, more than 30 Delta Dental executives were each paid in excess of $1 million in total compensation.

113.    Defendants have also used their ill-gotten gains to build stockpiles of excessive capital reserves.[2]

114.    Together, Delta Dental's lavish salaries and extreme reserves explain the rationale for the Association and the Delta Dental State Insurers' executives to be motivated to carry out and implement the conspiracies described herein and do derive significant supra-competitive profits from their anticompetitive practices.

---

[2] In 2017, Delta Dental Minnesota had assets of $213 million, and total liabilities of only $48.3 million; Delta Dental Illinois had total assets of $221 million compared to total liabilities of only $108.7 million; Delta Dental New Jersey had total assets of $323 million, and total liabilities of only $76.9 million; Delta Dental Ohio had total assets of $231 million, and total liabilities of only $39 million; and Delta Dental Rhode Island had total assets of $118 million, and total liabilities of only $28.4 million.

6.      **Antitrust Injury**

115.    Defendants' conspiracies have caused antitrust injuries to Plaintiff and the Class.

116.    The Market Allocation Conspiracy is an illegal horizontal market allocation agreement that resulted in reduced competition among dental insurance providers for the reimbursement rates offered to the providers. When Delta Dental is the dominant dental insurer by far nationwide, and when each Delta State Insurer is the only one allowed to sell Delta Dental plans in its territory, dental practices are essentially forced to accept Delta Dental patients despite Delta's below-market reimbursement rates, since the alternative is either losing large numbers of patients or receiving even lower compensation as a nonparticipating practice.

117.    Absent the Market Allocation Conspiracy, Delta Dental State Insurers could sell Delta Dental plans across territory and state lines, and they would do so in order to gain customers and income. Also, if individual states and territories were not heavily dominated by a Delta Dental State Insurer, it would be easier for non-Delta insurers to enter the market also. Thus, there would be more competition among dental insurers for the insurance premium business of dental plan sponsors and members, and for the dental goods and services business of dentists and dental practices, increasing the reimbursement rates available to the Delta Dental Providers. More competition also would decrease the premiums (or increase the coverage) available to dental plan sponsors and members.

118.    The Price Fixing Conspiracy is also an illegal price fixing agreement which results in Delta Dental State Insurers colluding to set the reimbursement rates as low as

they are able to maintain, and Delta Dental Providers receiving artificially low reimbursement rates for the services they provide to Delta Dental patients. Absent the conspiracy, competition among the Delta Dental State Insurers would naturally lead to higher reimbursement rates for the Delta Dental Providers.

119.    The Revenue Restriction Conspiracy is also an illegal agreement which enables Delta Dental to enforce the Market Allocation and Price Fixing Conspiracies by preventing Delta Dental State Insurers from competing in other territories via non-Delta insurance plans, directly reducing competition in the market for dental insurance, causing antitrust injury to Plaintiff and the Class. Absent the conspiracy, the Delta Dental State Insurers would conduct more dental insurance business apart from their Delta Dental-branded dental insurance business, and in competition with the Delta Dental-branded dental insurance business of other Delta Dental State Insurers. This increased competition would again result in increased reimbursement rates to the Delta Dental Providers, who would have the choice of accepting patients (and thus reimbursement rates) under multiple insurance plans, and not just the Delta Dental plans from the Delta Dental State Insurer that owns the territory in which they are located.

120.    Delta Dental has exerted its monopsony power to pay less reimbursement to the Delta Dental Providers, depressing dental treatment reimbursement rates as compared to a competitive market environment in a way that has had effects across the whole of the dental services industry in the United States.

### 7.    Delta Dental's Anticompetitive Agreements Should be Enjoined

121.    As outlined above, the Delta Dental State Insurers have significant market power within territories in which they conduct business. Defendants are using that market power to engage in anticompetitive practices that are causing ongoing harm.

122.    Delta Dental's conduct in engaging in the Market Allocation Conspiracy, the Price Fixing Conspiracy, and the Revenue Restriction Conspiracy is per se anticompetitive.

123.    The Price Fixing Conspiracy is an agreement between the Delta Dental State Insurers, who would be competitors but for the Market Allocation Conspiracy, and exists solely to allow the Delta Dental State Insurers to share the Delta Dental Providers' pricing information between themselves, and thereby to determine the lowest and most punitive rates of reimbursement that the Delta Dental Providers are willing to accept. No plausible procompetitive benefit is achieved or advanced by Delta Dental's imposition of punishingly below-market reimbursement rates to the Delta Dental Providers. To the contrary, the low reimbursement rates, combined with the fact that Delta Dental Providers had little choice but to accept them due to Delta Dental's market dominance, has likely reduced the quality of care provided to patients in the relevant markets.

124.    The Revenue Restriction Conspiracy also has the anticompetitive effect of reducing the amount of competition among the Delta Dental State Insurers in each of the state, multi-state, or national markets in which they conduct business by directly reducing the extent to which the Delta Dental State Insurers will compete when conducting business other than under the Delta Dental brand. Pursuant to the National Plans Agreement and implemented through the Association, the Delta Dental State Insurers entered into the

Revenue Restriction Conspiracy with the sole purpose of ensuring that they do not compete with each other's Delta Dental franchise business through non-Delta Dental branded business. There is no pro-competitive benefit to the conspiracy, which exists solely to enhance the territorial divisions achieved by the Market Allocation Conspiracy and to preserve Defendants' market dominance so they can impose the Price Fixing Conspiracy.

125.    In order to remedy these anticompetitive practices, Defendants should be enjoined from their territorial restrictions and the Delta Dental State Insurers should be permitted to offer Delta Dental insurance outside of their assigned territories and in competition with other Delta Dental State Insurers.

126.    Defendants should be enjoined from colluding to set the reimbursement rates offered to the Delta Dental Providers, so the providers (and their patients) can benefit from the higher reimbursement rates that would result if the Delta Dental State Insurers were forced to compete.

127.    Finally, Defendants should also be enjoined from the revenue restriction and allowed to derive an unlimited amount of revenue from their non-Delta Dental-branded dental insurance business. This would allow dental plan sponsors and members greater choice for dental insurance, which would in turn allow the Delta Dental Providers greater choice in the insurance plans they could chose to accept (and thus also in the reimbursement rates they were offered pursuant to those plans).

128.    Absent the Market Allocation Conspiracy, the Price Fixing Conspiracy, and the Revenue Restriction Conspiracy, the Delta Dental State Insurers would compete with each other in respect of the state, multi-state, and national markets for health insurance,

between and outside of their assigned territories, and in a way that would naturally produce higher reimbursement rates for the Delta Dental Providers and/or lower premiums for dental insurance plan sponsors and members.

## CLASS ACTION ALLEGATIONS

129.    Plaintiff brings this action seeking damages on behalf of itself and on behalf of a class pursuant to the provisions of Rule 23(a) and Rule 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure, and seeks injunctive relief on behalf of the following class (the "Injunction Class"):

> All dental service providers within the United States who accepted Delta Dental insurance plans, providing services to patients insured by Delta Dental in exchange for reimbursements paid by Delta Dental. Excluded from the class are Delta Dental, its subsidiaries, affiliate entities, and employees.

130.    Plaintiff brings this action on behalf of itself and as a class action under Rules 23(a) and Rule 23(b)(1) and (b)(3) of the Federal Rules of Civil Procedure, and seeks monetary damages on behalf of the following class (the "Damages Class"):

> All dental service providers within the United States, not owned or employed by any of the Defendants, who accepted Delta Dental insurance plans, providing services to patients insured by Delta Dental in exchange for reimbursements paid by Delta Dental from October 14, 2015 until such time as the anticompetitive conduct described herein ceases (the "Class Period").

131.    The Class is so numerous and geographically dispersed that joinder of all members is impracticable. While Plaintiff does not know the number and identity of all members of the Class, Plaintiff believes that there are thousands of Class members, the

exact number and identities of which can be obtained from the Association and the Delta Dental State Insurers.

132. There are questions of law or fact common to the Class, including, but not limited to:

a.    Whether Defendants engaged in the Market Division Conspiracy as alleged herein;

b.    Whether Defendants engaged in the Revenue Restriction Conspiracy as alleged herein;

c.    Whether Defendants engaged in the Price Fixing Conspiracy as alleged herein;

d.    Whether the conduct of Defendants in respect of the Market Allocation Conspiracy as alleged in this complaint caused damages to Plaintiff and other members of the Class and the amount and extent of those damages;

e.    Whether the conduct of Defendants in respect of the Revenue Restriction Conspiracy as alleged in this complaint caused damages to Plaintiff and other Class members, and if so, the amount and extent of those damages;

f.    Whether the conduct of Defendants in respect of the Price Fixing Conspiracy as alleged in this complaint caused damages to Plaintiff and other Class members, and if so, the amount and extent of those damages; and

g.    Whether the conduct of Defendants in respect of the three above-described conspiracies combined in full, or in part, caused damages to Plaintiff and other members of the Class and the amount and extent of those damages.

h.    The operative time period and extent of Delta's antitrust violations; and

i.    The appropriate injunctive and equitable relief for the Class.

133.   Plaintiff is a member of the Class; its claims are typical of the claims of the members of the Class; and Plaintiff will fairly and adequately protect the interests of the members of the Class.

134.   The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

135.   Plaintiff is a member of the Class, has claims that are typical of the claims of the Class members, has interests coincident with and not antagonistic to those of the other members of the Class, and will fairly and adequately protect the interests of the members of the Class. In addition, Plaintiff has retained and is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

136.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Association and the Delta Dental State Insurers.

137.   The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

138.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is readily definable, and the Class members will be identifiable from the defendants' records. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment of this case as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This class action does not present any difficulties of management that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### COUNT I
### SHERMAN ACT CLAIM FOR INJUNCTIVE RELIEF

139.   Plaintiff incorporate the allegations set forth in the foregoing paragraphs as though set forth herein.

140.   Plaintiff brings this is a claim for Injunctive Relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, on behalf of itself and the Injunction Class.

141.    As alleged herein, Defendants' Market Allocation Conspiracy, their Price Fixing Conspiracy, and their Revenue Restriction Conspiracy constitute *per se* violations of Section 1 of the Sherman Act, 15 U.S. C. §§ 1 and 3, or are at the very least subject to a "quick look" rule of reason analysis.

142.    Defendants' unlawful conduct threatens to continue to injure Plaintiff. Plaintiff seeks a permanent injunction prohibiting Defendants and all others acting in concert from continuing their illegal conspiracies and ordering them to take appropriate remedial action to correct and eliminate any remaining effects of either of the conspiracies.

143.    Plaintiff reserves the right to seek preliminary injunctions as necessary.

## COUNT II
## SHERMAN ACT CLAIM FOR MONETARY DAMAGES

144.    Plaintiff incorporates the allegations set forth in the foregoing paragraphs as though set forth herein.

145.    Plaintiff brings this claim under Section 4 of the Clayton Act, 15 U.S.C. § 15, for trebled damages and interest on behalf of itself and the Damages Class.

146.    As alleged more specifically above, Defendants' Market Allocation Conspiracy, Price Fixing Conspiracy, and Revenue Restriction Conspiracy constitute a market allocation and price fixing scheme that represents a contract, combination, and conspiracy within the meaning of Sections 1 and 3 of the Sherman Act, 15 U.S.C §§ 1 and 3.

147.    Defendants have agreed to divide and allocate the geographic markets for the provision of dental insurance into a series of exclusive territories for each of the Delta

Dental State Insurers. In so doing, Delta Dental has agreed to suppress competition and to increase its profits by decreasing payments to Delta Dental Providers in violation of Sections 1 and 3 of the Sherman Act. Delta Dental Providers who choose not to be in-network have an extremely limited market for the dental services they provide due to the lack of competition which results from Defendants' illegal conduct. Defendants' market allocation agreements therefore are *per se* illegal under Sections 1 and 3 of the Sherman Act.

148.    As a direct and proximate result of Defendants' continuing violations of Section 1 of the Sherman Act, Plaintiff has suffered and continues to suffer injury and damages of the type that the federal antitrust laws were designed to prevent. Such injury flows directly from that which makes Defendants' conduct unlawful. These damages consist of having been paid less, having been forced to accept far less favorable rates and other contract terms, and/or having access to far fewer patients than they would have but for Defendants' anticompetitive agreement.

### COUNT III
### MINNESOTA ANTITRUST LAW CLAIM FOR MONETARY DAMAGES

149.    Plaintiff incorporates the allegations set forth in the foregoing paragraphs as though set forth herein.

150.    Plaintiff brings this claim under Minn. Stat. § 325D.49 et seq., for trebled damages and interest on behalf of itself and the Damages Class.

151.    Defendants' Market Allocation Conspiracy, Price Fixing Conspiracy, and Revenue Restriction Conspiracy constitute a market allocation and price fixing scheme that

represents a contract, combination, and conspiracy within the meaning of Minn. Stat. § 325D.51.

152.    Defendants have agreed to divide and allocate the geographic markets for the provision of dental insurance into a series of exclusive territories for each of the Delta Dental State Insurers. In so doing, Delta Dental has agreed to suppress competition and to increase its profits by decreasing payments to Delta Dental Providers in violation of Minn. Stat. § 325D.51. Delta Dental Providers who choose not to be in-network have an extremely limited market for the dental services they provide due to the lack of competition which results from Defendants' illegal conduct. Defendants' market allocation agreements are therefore *per se* illegal.

153.    As a direct and proximate result of Defendants' continuing violations of Minn. Stat. § 325D.51, Plaintiff has suffered and continues to suffer injury and damages of the type that the Minnesota Antitrust Law was designed to prevent. Such injury flows directly from that which makes Defendants' conduct unlawful. These damages consist of having been paid less, having been forced to accept far less favorable rates and other contract terms, and/or having access to far fewer patients than they would have but for Defendants' anticompetitive agreement.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that this Court:

a.    Determine that this action may be maintained as a class action under Fed. R. Civ. P. 23;

b.      Adjudge and decree that Defendants have violated Section 1 of the Sherman Act;

c.      Adjudge and decree that Defendants have violated Minn. Stat. § 325D.51;

d.      Permanently enjoin Defendants from entering into, or from honoring or enforcing, any agreements that restrict them from competing in the territories or geographic areas in which any Delta Dental State Insurers may compete;

e.      Permanently enjoin Defendants from continuing with the Price Fixing and Revenue Restriction Conspiracies and to remedy all effects or vestiges of those conspiracies;

f.      Award Plaintiff and the Class treble damages;

g.      Award costs and attorneys' fees to Plaintiff;

h.      Conduct a trial by jury; and

i.      Award any such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 20, 2019                Respectfully submitted,

                                        */s/ Daniel C. Hedlund*
                                        Daniel E. Gustafson
                                        Daniel C. Hedlund
                                        Michelle J. Looby
                                        David A. Goodwin
                                        Daniel J. Nordin
                                        **GUSTAFSON GLUEK PLLC**
                                        Canadian Pacific Plaza
                                        120 South Sixth Street, Suite 2600
                                        Minneapolis, MN 55402
                                        Telephone: (612) 333-8844
                                        Fax: (612) 339-6622
                                        dgustafson@gustafsongluek.com
                                        dhedlund@gustafsongluek.com
                                        mlooby@gustafsongluek.com
                                        dgoodwin@gustafsongluek.com
                                        dnordin@gustafsongluek.com

                                        Kenneth A. Wexler
                                        Justin N. Boley
                                        Melinda J. Morales
                                        **WEXLER WALLACE LLP**
                                        55 West Monroe St., Ste. 3300
                                        Chicago, IL 60603
                                        Telephone: (312) 346-2222
                                        Fax: (312) 346-0022
                                        kaw@wexlerwallace.com
                                        jnb@wexlerwallace.com
                                        mjm@wexlerwallace.com